Deiter v. State.

# CRIMINAL LAW—JURY.

[Pike (4th) Circuit Court, May 19, 1909.]

Cherrington, Jones and Walters, JJ.

## *Guy H. Deiter v. State of Ohio.

Selection by Court of Grand Jurors from List of Grand and Petit Jurors Called without Designation of Service Required and Designation of Remainder of List as Petit Jurors, and Arbitrary Discharge of Petit Panel, Held Abuse of Discretion.

Assuming to act under Sec. 5165 Rev. Stat., the common pleas judge ordered thirty-five names to be drawn from the jury wheel to act as grand or petit jurors, without designation whether they should be grand or petit, or what number should constitute either, in his direction to the clerk. Thirty-four having appeared at the first day of the term he selected fifteen of the said persons and directed the clerk to call them as grand jurors. This left the remaining nineteen as the regular petit panel. Later at the term he discharged the entire regular petit panel because it or they were "so interested in causes coming on further to be heard in this court, so as to disqualify them from sitting thereon," and ordered the new jury drawn to appear on the day the accused was tried. Held:

(1) A court or judge, under 5165 Rev. Stat. has no authority to so exercise his personal selection of the entire grand jury panel in the manner stated. The order to the clerk should stipulate the number of each panel to be drawn; and the clerk should draw from the wheel the grand and petit juries as distinct panels.

(2) A court has no authority to discharge the entire panel of the petit jury for the cause above stated; and it is an abuse of discretion so to do.

(3) The irregularity in the selection of the grand jury, thus pursued, cannot be attacked by plea in abatement.

[Syllabus by the court.]

Error to Pike common pleas court.

Guy H. Deiter was indicted for grand larceny. He excepted to the indictment by filing a verified plea in abatement which, among other facts, set forth that one of the judges of the common pleas court of Pike county directed the clerk of said court to draw from the jury wheel in the presence of the sheriff, thirty-five names of persons to serve as grand and petit jurors for the Nov. term. 1908, of the court in said county, and to appear at 9 o'clock A. M. on November 16, 1908, that being the first day of the term. On November 5, 1908, the deputy clerk drew thirty-five names from the wheel as directed and issued a venire facias to the sheriff commanding him to serve said persons to attend said court as jurors, either grand or petit, at the time named. On the seventh of November the sheriff served all of the persons personally, except one who was out of the county. On November 16, 1908,

the thirty-four persons so summoned as jurors appeared in court, "*and the judge of said court directed the clerk of said court to call certain persons of said venire selected by said judge of said court as grand jurors for said term and court. Thereupon the fifteen persons so selected were impaneled and sworn.*" The plea then alleges that the fifteen persons so selected, after hearing a part of the evidence, considered the evidence and indicted the defendant, but before returning the indictment into court one of the members was excused for sickness and another substituted to fill the panel; that the substituted member did not hear all of the evidence submitted to the others, and that a part of the evidence was not resubmitted before the return of the indictment.

A demurrer was interposed to this plea by the state, on the ground that the plea did not state facts sufficient, etc. The demurrer was sustained and the plea overruled.

The additional errors claimed are predicated upon the motion and challenge to the array of the petit jury, and upon oral motions, made in open court prior to its empaneling, which appear in the bill of exceptions. It appears from the record, that the regular petit jury empaneled for the term was discharged by the court for the reason as alleged in the entry, "that the present petit jury is so interested in causes coming on further to be heard in this court, so as to disqualify them from sitting thereon; it is ordered that said jury and the several jurors thereof, be, and they are hereby discharged from further service in this court." It further appears that the court ordered that "*the petit jury heretofore selected by the court*" having been duly discharged, the clerk draw new names from the wheel to serve as a new petit jury for the term and cause them to be summoned to appear at court on December 30, 1908, the time when defendant's case came on for trial.

Other motions were made to the court; a demand for the regular jury originally selected was made and overruled. A motion to set aside and challenging the array was made, based upon the action of the court in discharging the regular jury for the cause stated, and in impaneling the new petit jury. These motions were also overruled. A trial followed, resulting in conviction.

**S. L. Patterson** and **C. H. Henkel,** for plaintiff in error.

**J. A. Douglas,** Pros. Atty., for defendant in error:

Cited and commented upon the following authorities. *Lindsay v. State,* 24 Circ. Dec. 1 (4 N. S. 409); *Stewart v. State,* 1 Ohio St. 66; *Tatum v. Young,* 1 Port. (Ala.) 298; *State v. Marshall,* 8 Ala. 302;

Delter v. State.

*Hurley* v. *State,* 29 Ark. 17; *People* v. *Lee,* 17 Cal. 76; *People* v. *Arceo,* 32 Cal. 40 *Stout* v. *Hyatt,* 13 Kan. 232; Thompson & Merriam, Juries, Secs. 259, 263; 17 Am. & Eng. Enc. Law 1150, 1173, 1174, 1275, 1281; Brickwood's Sackett's Instructions, Secs. 17, 24, 225; *State* v. *Buchanan,* Wri. 233; *Reed* v. *State,* 15 Ohio 217; *Bond* v. *State,* 23 Ohio St. 349; *Huling* v. *State,* 17 Ohio St. 583; *State* v. *Barlow,* 70 Ohio St. 363 [71 N. E. Rep. 726]; *State* v. *Thomas,* 61 Ohio St. 444 [56 N. E. Rep. 276; 48 L. R. A. 459]; *Stahl* v. *State,* 5 Circ. Dec. 29 (11 R. 23); *Little Miami Ry.* v. *Collett,* 6 Ohio St. 182; *Ohio Life Ins. & Tr. Co.* v. *Goodin,* 10 Ohio St. 557; *Scovern* v. *State,* 6 Ohio St. 288; *McHugh* v. *State,* 42 Ohio St. 154; *Weaver* v. *State,* 24 Ohio St. 584; *Dille* v. *State,* 34 Ohio St. 617 [32 Am. Rep. 395]; *Turk* v. *State,* 7 Ohio (pt. 2) 240; *United States* v. *Wilson,* 3 O. F. D. 282 [6 McLean 604]; *Wagner* v. *State,* 42 Ohio St. 537; *Blair* v. *State,* 3 Circ. Dec. 242 (5 R. 496).

JONES, J.

The record might have stated the crucial facts in this case a little more succinctly. As admitted by counsel on both sides, the facts briefly stated are as follows:

The judge ordered thirty-five names to be drawn from the jury wheel to act as grand or petit jurors, without designation whether they should be grand or petit, or what number should constitute either, in his direction to the clerk. Thirty-four having appeared at the first day of the term, he selected fifteen of the said persons, and directed the clerk to call them as grand jurors. This left the remaining nineteen as the regular petit panel. Later at the term he discharged the entire regular petit panel because it or they were "so interested in causes" to be heard, and ordered a new jury drawn to appear on the day the accused was tried.

Plaintiff in error claims a number of errors were committed, but, with the exception of two, we consider them irregularities merely, and not substantial errors. The vital questions in this case, as we view them, relate to the method employed in the empaneling of the grand and petit juries. Broadly speaking we recognize the well known legal principle that irregularities in the empaneling of juries, which do not affect the substantial rights of the accused, will not be considered on review; that the method of their selection concerns the public rather than the parties. But it does not follow that the power of the court or judge transcends the law relating to their selection. The method employed in the case at bar, if adopted in practice, would sap at the foundations of our jury system. It is autocratic in that it would in-

vest the trial judge with almost unlimited power in the construction of petit and grand juries. It is not denied but that the state may confer such power as it pleases in the method of selection, having regard only to the constitutional guarantee of a trial by an impartial jury. The method employed affects not only the accused who was on trial, but the entire body politic. And we cannot more aptly state our views in that regard than by adopting the language of the learned judge, in State v. Barlow, 70 Ohio St. 363, 379 [71 N. E. Rep. 726], wherein he says:

"The right of everyone accused of crime to a fair trial should be secured to him, and this court, as in the past, will insist upon this, but we do not incline to search for unsubstantial errors, or to give undue effect to them when discovered by others."

1. In our judgment Sec. 5165 Rev. Stat. requires the court or judge, in his order to the clerk to cause any number of persons to be summoned as *grand or petit jurors*, to specify in his order the number of grand and petit jurors, respectively, that is to be drawn from the wheel. The requirement of the section, "to be summoned to serve as grand or petit jurors," taken in connection with the cognate sections immediately following, must be construed to mean that the direction should be, to cause them to be summoned to serve as *grand* jurors, or to be summoned as *petit* jurors as the case may be. The section further provides that grand and petit juries shall be impaneled from persons "*so selected and summoned as aforesaid.*"

Sections 5169, 5170 and 5171 Rev. Stat. recognize the fact of separate bodies as drawn from the wheel. By the first the summons is issued for the person drawn as grand or petit juror "*as the case may be*"; the second by its provision that "if any person selected as a grand or petit juror, as aforesaid, be not summoned" equally recognizes the distinction between the two bodies. Section 5171 provides, if there be a deficiency in the grand jury, that the court may issue a venire for talesman to supply the deficiency.

The statute does not even impliedly authorize the court arbitrarily to select these two juries any more than it does the clerk. The care by which the legislature has attempted to safeguard the wheel and its contents, and by providing the uniformity of pieces of paper upon which the names are written and their thorough admixture before drawing, indicates that, to the wheel and not to the court or judge, is confined the impartiality of selection of the grand and petit juries. The order directed to the clerk should state the number of each desired to be selected, or a separate writ might issue for each panel; and the

Deiter v. State.

clerk should draw each panel as a distinct panel. So far as we know, this is the universal custom employed by the common pleas judges in this circuit. And while this fact does not determine its validity, it serves to show the construction these judges give the law.

2. Much of what has been said of the method employed in the selection of the grand jury would apply to the selection of the petit jury, if those facts were fully incorporated in the bill in support of the challenge to the array of the petit jury. The action of the court in selecting certain persons from the whole list to serve as a grand jury, was tantamount to the selection of the regular petit jury. The remaining nineteen persons necessarily became the regular petit jury.

However, there is further reason why the challenge to the array should have been sustained. Section 7276 Rev. Stat. provides that the jury summoned and impaneled according to the provisions of law relating to the summoning and impaneling of juries in other cases, shall try the accused. The court, two days before the trial of the accused, discharged the entire regular panel, for the ostensible reason as shown by its journal, that it was so interested in causes coming on further to be heard as to disqualify them from sitting thereon. The action of the court in this regard is sought to be upheld by Sec. 5172 Rev. Stat., which provides that if, *"from any cause,"* it becomes necessary to have a new petit jury or members to fill up the regular panel, the court may order the names of the number of jurors required for the new petit jury, etc. The cause mentioned in that section not only includes one of the causes of excuse granted by such sections as 5179 and 5180, but would no doubt include any other personal cause addressed to the wise discretion of the court. It does not include the interest of the juror or panel in pending criminal causes coming on to be heard, for the reason that such are especially provided for by other sections of the code, in the examinations of the juror on *voir dire.*

Section 7279 Rev. Stat. provides that challenges for cause shall be tried by the court, on the oath of the person challenged, or on other evidence. Challenge pertaining to interest or partiality of the juror is made and disposed of by Sec. 7278. We are not disposed to deny a wide discretion in the court in the discharge of jurors, but to discharge the entire regular jury, consisting presumably of nineteen persons, and prejudging their qualifications to sit as shown by the journal entry, appears to us as an abuse of discretion. If the first panel could be thus discharged, the succeeding one could also be, and thus *ad libitum* until a satisfactory jury could be obtained.

This would furnish opportunity for dictatorial conduct if the

practice were indulged in. It would be entirely feasible, following the methods employed, to construct a grand jury of the same political complexion, or committed wholly to a "wet" or "dry" sentiment; and if the culling of the original list of jurors left a petit jury unsatisfactory to the court because of political or other bias, the *residuum* could be discharged and a new jury obtained. The legislature has wisely provided a nonpartisan commission for the selection of "judicious and discreet persons having the qualifications of electors" whose names are placed in the wheel for jury duty, and we do not think it wise, in the construction of these jury statutes, to uphold a construction that would furnish opportunity to nullify, in a measure, the intendment of the legislature and the action of the jury commissioners.

Had the journal entry merely recited that the jury was excused, without assigning the cause for their general disqualifications, it would be presumed that there were proper reasons for their discharge and that discretion had not been abused. In the cases cited to us bearing upon this question, in none of them appear such drastic action in discharging the jury as disclosed here.

3. The other question presented is, whether the method employed in the selection of the grand jury can be presented by a plea in abatement. Sec. 5175 Rev. Stat. provides that when the grand or petit jury has not been drawn or summoned as prescribed by law, that the objection may be made by challenge to the array. Inasmuch as the plea in abatement did not question the legal qualifications of any of the individual members of the grand jury irregularly selected, we are constrained, by judicial authority in this state to hold that the irregularities should have been attacked by challenge and not by plea in abatement. *Huling* v. *State*, 17 Ohio St. 583; *Lindsay* v. *State*, 24 O. C. C. 1 (4 N. S. 409); *Blair* v. *State*, 3 Circ. Dec. 242 (5 R. 496); *State* v. *Easter*, 30 Ohio St. 542, 549 [27 Am. Rep. 478].

The court below erred in its discharge of the regular petit jury for the cause stated, and should have sustained the challenge to the array. The judgment of conviction will be reversed, with costs, and cause remanded to the court of common pleas for a new trial.

**Cherrington** and **Walters, JJ.**, concur.